**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MACDERMID PRINTING SOLUTIONS, INC., Plaintiff, v. CORTRON CORP., Defendant. | No. 3:08cv1649 (MPS) |

Field Code Changed

**JURY INSTRUCTIONS**

***DRAFT***

INTRODUCTION ............................................................................................... 1~~1~~
PART I: GENERAL INSTRUCTIONS ................................................................ 2
    A.   ROLE OF THE COURT .......................................................................... 2
    B.   INSTRUCTIONS TO BE CONSIDERED AS A WHOLE ...................... 2
    C.   BOTH SIDES ENTITLED TO FULL AND FAIR HEARING ............... 3~~3~~
    D.   OBJECTIONS AND RULINGS ................................................................ 4~~4~~
    E.   DUTIES OF THE JURY ......................................................................... 5~~5~~
    F.   "PROVE," "FIND," AND "ESTABLISH" ............................................. 6~~6~~
    G.   BURDEN OF PROOF:  PREPONDERANCE OF THE EVIDENCE ............... 7~~7~~
    H.   FORMS OF EVIDENCE ......................................................................... 8~~8~~
    I.   WHAT IS NOT EVIDENCE ................................................................... 9~~9~~
    J.   DIRECT & CIRCUMSTANTIAL EVIDENCE ........................................ 10~~10~~
    K.   INFERENCE DEFINED ........................................................................ 11~~11~~
    L.   WITNESS CREDIBILITY – GENERAL ............................................... 11~~11~~
    M.   IMPEACHMENT OF WITNESSES ....................................................... 12~~12~~
    N.   EXPERT WITNESSES ........................................................................... 13~~13~~
    O.   UNCONTRADICTED TESTIMONY ..................................................... 14~~14~~
PART II: MACDERMID'S CLAIMS IN THIS CASE ....................................... 14~~14~~
    A.   BREACH OF CONTRACT ..................................................................... 14~~14~~
    B.   VIOLATIONS OF FEDERAL ANTITRUST LAWS .............................. 16~~16~~
    C.   [VIOLATION OF CONN. GEN. STAT. § 35-26 ................................... 26~~25~~
    D.   [VIOLATION OF CONN. GEN. STAT. § 35-28 ................................... 27~~26~~

E.    MISAPPROPRIATION OF TRADE SECRETS ("CUTSA") ....................... 27<s>26</s>
F.    COMPUTER CRIMES ................................... **Error! Bookmark not defined.**<s>28</s>
G.    UNFAIR TRADE PRACTICES ACT ("CUTPA") ....................................... 31<s>29</s>
PART III: CORTRON'S COUNTERCLAIMS IN THIS CASE ................................ 33<s>31</s>
A.    BREACH OF CONTRACT ................................................................. 33<s>31</s>
B.    UNFAIR TRADE PRACTICES ACT ("CUTPA") ....................................... 35<s>33</s>
C.    [WRITTEN AND] ORAL FRAUD ..................................................... 35<s>33</s>
D.    NEGLIGENT MISREPRESENTATION ............................................... 37<s>34</s>
E.    BREACH OF GOOD FAITH AND FAIR DEALING ................................ 37<s>34</s>
F.    UNJUST ENRICHMENT .................................................................. 38<s>35</s>
G.    QUANTUM MERUIT ...................................................................... 39<s>36</s>
PART IV: DAMAGES ........................................................................................ 39<s>36</s>
A.    GENERAL INSTRUCTIONS ON DAMAGES ........................................ 39<s>36</s>
B.    COMPENSATORY DAMAGES – GENERAL INSTRUCTIONS ............... 40<s>37</s>
C.    COMPENSATORY DAMAGES – SPECIFIC INSTRUCTIONS ................ 42<s>39</s>
D.    PUNITIVE DAMAGES .................................................................... 47<s>44</s>
V. FINAL INSTRUCTIONS ................................................................................ 48<s>45</s>
A.    NOTE TAKING ............................................................................. 48<s>45</s>
B.    UNANIMOUS VERDICT ................................................................. 49<s>45</s>
C.    FOREPERSON ............................................................................... 49<s>46</s>
D.    VERDICT FORM ............................................................................ 50<s>47</s>
E.    FINAL INSTRUCTIONS .................................................................. 51<s>48</s>

**<u>INTRODUCTION</u>**

Members of the jury, you have now heard all of the evidence in this case. I shall now instruct you concerning the law applicable to the case. After that, you will hear the arguments of counsel and then I will give you some final instructions. You will then return to the jury room to deliberate in accordance with these instructions. Before I give you these instructions, however, I want to express my thanks to you for the time and energy you have devoted to this trial. Jury service is rarely convenient, but without you, justice could not be done in this case.

These are long instructions, and it will take some time for me to read them to you. But it is important that you listen carefully and pay close attention. You have been provided with a copy so that you can read along as we go.

My instructions will be in two parts: first, I will discuss general rules concerning the role of the court and the duty of the jury; second, I will go over the issues in this case and set out the specific elements that you must find based on the evidence at trial.

Before we begin, I ask you to look over the other document that was placed on your seats – namely, the Verdict Form, with regard to the claims and counterclaims in this case. After I have given these instructions, you will go back into the jury room to deliberate. You will have with you the following: the original Verdict Form (all of your individual copies will be collected before you deliberate), the original exhibits, your individual copies of these instructions and any personal notes that you may have taken. At the conclusion of your deliberations, you will use the Verdict Form to report your verdict to the Court and the parties.

1

### PART I: GENERAL INSTRUCTIONS

**A. ROLE OF THE COURT**

As judge, I perform basically two functions during the trial. First, I decide what evidence you may consider. You have heard me doing that throughout the trial. Second, I instruct you on the law that you are to apply to the facts in this case. I gave you some preliminary instructions before trial began, but it is now – at the close of evidence – that the final instructions governing your deliberations are given, so please be patient and listen closely. I believe that everything I am going to tell you is consistent with the preliminary instructions I gave you at the start of the trial, but if you have any doubt, you should not rely on anything different I may have said in the preliminary instructions. The instructions I am now giving you must guide your deliberations in this case.

It is your duty to take the law as I will give it to you and to apply it to the facts as you determine them. You must take the law as I give it to you and if any attorney or any witness or exhibit has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. Also, you must not substitute your own notions or opinions of what the law is or ought to be for what I tell you the law is in my instructions.

**B. INSTRUCTIONS TO BE CONSIDERED AS A WHOLE**

I may repeat certain parts of these instructions. That does not mean that those parts should be emphasized. You should not single out any one part of my instructions and ignore the rest. Instead, you should consider all of the instructions as a whole and consider each instruction in light of all the others.

The order in which I give you instructions does not indicate their relative importance. Do not read into these instructions, or into anything I have said or done, as any suggestion from me about what verdict you should return—that is a matter for you alone to decide.

I should also point out to you that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

## C.  BOTH SIDES ENTITLED TO FULL AND FAIR HEARING

Regardless of your ultimate decision about the parties' claims, both parties in this case are entitled to a full and fair hearing. The parties are entitled to a trial free from prejudice or bias. Our justice system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right. In deciding the facts or applying the law as I have given it to you, you must not be swayed by bias or prejudice for or against any party. All persons stand equal before the law and are to be dealt with as equals in a court of justice, regardless of who they are. You must not be swayed by your personal opinions about any of the issues raised in this trial. You should not be swayed by sympathy. You should be guided solely by the evidence presented during trial and the law that I give you, without regard to the consequences of your verdict. If you let your sympathy for one side or another interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.

3

**D.  OBJECTIONS AND RULINGS**

Our courts operate under an adversary system in which we believe that the truth will emerge through the competing presentations of adverse parties.  It is the role of the attorneys to press as hard as they can for their respective positions.  In fulfilling that role, they have not only the right, but the obligation to make objections to the introduction of evidence they feel is improper.  You should not show any prejudice against an attorney or his or her client because the attorney objected to the admission of evidence or the phrasing of a question, or asked the Court to rule on an objection or the propriety of a question.  The application of the rules of evidence is not always clear, and lawyers often disagree about them.  It has been my job as the judge to resolve these disputes during the course of the trial.

It is important for you to realize, however, that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other.  You are not to concern yourself with why a lawyer made an objection or why I ruled on it in the manner that I did.  You should draw no inference from the fact that a lawyer objected to evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.  My rulings on objections have nothing to do with the merits of the case or with the credibility of the witnesses.

If I have sustained an objection to a question asked of a witness, you must disregard the question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if he or she had been permitted to answer the question.  If I have stricken or told you to disregard an answer, you must not rely on that answer, because it is not evidence.  If I have given you a limiting instruction that certain evidence was to be considered by

4

you for a limited purpose only, then you must follow that limiting instruction and use the evidence only for the limited purpose for which it was admitted.

For example, I instructed you during the trial and instruct you now again that you heard evidence relating to an indemnification clause by which DuPont agreed to pay any judgment against Cortron. That is evidence that you may consider in this case. Should you determine that Cortron is liable to MacDermid, I instruct you not to consider the indemnification clause for the purposes of determining MacDermid's entitlement to damages or the amount of those damages. Rather, if you find that damages are due, you must award any damages without regard to whether DuPont has agreed to pay any judgment against Cortron.

One further note about attorneys: During the course of a trial, one cannot help but recognize the various personalities and styles of the attorneys. But it is important for you as jurors to recognize that this is not a contest between attorneys. Whatever you may think about the conduct of the lawyers during this trial, you must remember that this dispute is about the parties, not the lawyers, and you must decide this case solely on the basis of the evidence. Remember, statements and characterizations of the evidence by the attorneys are not evidence. Insofar as you find their closing arguments to be helpful, take advantage of them, but it is your memory and your evaluation of the evidence and my instructions on the law that count in this case.

## E.  DUTIES OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of witnesses. You resolve any conflicts that may exist in the testimony. You draw whatever reasonable inferences you decide should be drawn from the facts you determine, and you weigh the evidence. No one may invade your

5

province or function as jurors. Because you are the sole and exclusive judges of the facts, I do not mean to indicate, in this charge or at any time during the trial, any opinion as to the facts or as to what your verdict should be. The rulings I have made during the trial are not any indication of a view of what your decision should be or which party should prevail in this case, because I have no view on those matters.

In order for you to determine the facts, you must rely upon your own recollection of the evidence. In reaching a verdict, you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you.

The verdict you reach must be unanimous; that is, agreed upon by each of you. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence in the case with your fellow jurors.

## F. "PROVE," "FIND," AND "ESTABLISH"

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the Plaintiff must do in order to establish the liability of the Defendant. My use of the word "prove" means "prove by the preponderance of the evidence," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts, you must find those facts to have been proven by the preponderance of the evidence, even if I simply use the word "find." Likewise, I will speak of the parties "establishing" various facts. Even if I simply use the word "establish," you must find that fact has been established by the preponderance of the evidence.

6

**G. BURDEN OF PROOF:  PREPONDERANCE OF THE EVIDENCE**

Because this is a civil case, the Plaintiff has the burden of proving every disputed element of its claims by a preponderance of the evidence, and the Defendant has the burden of proving every disputed element of its counterclaims by a preponderance of the evidence.

With respect to the Plaintiff's claims, to establish a fact by a preponderance of the evidence, the Plaintiff must prove that the fact is more likely true than not true.  In other words, if you find that the credible evidence on a given issue either favors the Defendant or is evenly divided between the Plaintiff and the Defendant, then you must decide that issue for the Defendant.  However, if the Plaintiff proves that a fact is more likely true than not, even if only slightly more true than not, then you are to find that it has proven the fact by a preponderance of the evidence.

The same is true for facts that the Defendant must prove with respect to its counterclaims. If you find that the credible evidence on a given issue either favors the Plaintiff or is evenly divided between the Plaintiff and the Defendant, then you must decide that issue for the Plaintiff. However, if the Defendant proves that a fact is more likely true than not, even if only slightly more true than not, then you are to find that it has proven the fact by a preponderance of the evidence.

It might be helpful to visualize a pair of balanced scales.  Imagine that you put on one scale the evidence you find credible, relevant and supportive of the Plaintiff on a particular issue on which it bears the burden of proof, and place on the other scale the evidence you find credible, relevant and supportive of the Defendant.  If the scales tip in favor of the Defendant on that issue, even a little bit, or if the scales are evenly balanced, the Plaintiff has not sustained its burden of proof on the issue.  But if the scales tip in favor of the Plaintiff on that issue, even a

7

little bit, then on that issue it will have sustained its burden of proof. You should of course reverse this analogy in deciding whether the Defendant has sustained its burden of proof on its counterclaims. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or exhibits.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should not consider or discuss that standard in your deliberations.

**H. FORMS OF EVIDENCE**

Next, I want to discuss with you generally what we mean by evidence and how you should consider it. The evidence from which you are to decide what the facts are comes in one of two forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, and regardless of who called the witness. Some of the testimony in this case has been in the form of a video deposition. Deposition testimony constitutes evidence just like live testimony.

Second, there are the exhibits that have been received into the trial record. All of the exhibits that have been admitted into evidence will be with you in the jury room. If an exhibit has been admitted into evidence, it is evidence that can be considered by you regardless of whether any witness referred to the exhibit or testified about it during the trial.

8

One word about the exhibits that you will have in the jury room. You may notice that certain exhibit numbers have not been used. For example, you may find exhibit number 5 and number 7 but not find number 6. Please do not be concerned about the numerical sequencing of exhibits and do not think that an exhibit is missing. The reason for what would otherwise seem like gaps is that we assigned all of the potential trial exhibits numbers long before trial, and then before or during trial, counsel decided not to introduce certain exhibits or certain exhibits were simply marked for identification purposes and then not made full exhibits. We've checked the exhibits and made sure that you will have all of the exhibits that you should have, so once again do not pay any attention to the numbering or sequencing of the exhibits.

## I.  WHAT IS NOT EVIDENCE

It is the witnesses' answers, and not the lawyers' questions, that are evidence. At times, a lawyer may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because the assumed fact was contained in the lawyer's question.

Testimony that I have ordered stricken, testimony that I have instructed you to disregard, and testimony that I have excluded are not evidence and may not be considered by you in rendering your verdict.

What the lawyers say in their opening statements and closing arguments, in their comments, objections and even in their questions is not evidence. What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, you should rely on your memory.

Moreover, what I may have said during the trial or what I may say in these instructions is not evidence, and my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.

It is for you—and you alone—to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

## J.  DIRECT & CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence includes a witness's testimony about something the witness knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard.  For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Also assume that as you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to infer that it had been raining.

That is all there is to circumstantial evidence.  On the basis of your reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

10

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict be based on a preponderance of all of the evidence presented.

## K.  INFERENCE DEFINED

During the trial you may have heard the attorneys use the term "inference," and in their arguments, they may ask you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proven by direct or circumstantial evidence.  One party may ask you to draw one set of inferences, while the other party asks you to draw another.  It is for you, and you alone, to decide which inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.  The mere process of drawing an inference from the evidence does not change the burden of proof, which remains with the Plaintiff throughout the case.  Finally, you may not draw any inferences from the mere fact that the Plaintiff filed this lawsuit or that the Defendant has chosen to defend it.

## L.  WITNESS CREDIBILITY – GENERAL

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the

11

credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did while testifying counts in your determination. How did the witness impress you? Was he or she frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her behavior, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor and intelligence; the reasonableness and probability of the witness's testimony; its consistency or lack of consistency; and its corroboration or lack of corroboration with other credible testimony.

Always remember that in assessing any witness's testimony you should use your common sense, your good judgment, and your own life experience.

**M. IMPEACHMENT OF WITNESSES**

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other

time the witness said or did something inconsistent with the witness's present testimony.  It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony.  Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

## N.  EXPERT WITNESSES

We have had in this case the testimony of expert witnesses.  Expert witnesses are people who, because of their training, education, and experience, have knowledge beyond that of the ordinary person.  Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions.  Ordinarily, a witness cannot give an opinion about anything, but rather is limited to testimony as to the facts in that witness'ss personal knowledge. The experts in this case have given opinions.  However, the fact that these witnesses may qualify as experts does not mean that you have to accept their opinions. You can accept or reject their opinions.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had and the documents available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the facts, activity and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result.  You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence.  Based on all of those things, together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept the opinion.  You may believe all, some or none of the testimony of an expert witness.  In other words, an expert's testimony is subject to your review like that of any other witness.

## O.  UNCONTRADICTED TESTIMONY

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not discredited or impeached.  You may decide, because of the witness's manner and demeanor or because of the improbability of his or her testimony or for other reasons, that the witness's testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately related what in fact occurred.

### PART II: MACDERMID'S CLAIMS IN THIS CASE

The Plaintiff in this case, MacDermid, has brought ▮▮ claims against the Defendant, Cortron.  I will now explain the law applicable to each claim.

## A.  BREACH OF CONTRACT

MacDermid's first claim is for breach of contract.  To establish a breach of contract claim, a party must prove four basic propositions, or "elements":

   (1)   Contract – that the parties entered into a contract

   (2)   Performance – that the party claiming the breach did what the contract required it to do;

   (3)   Breach – that the other party breached or violated a term of the contract; and

14

(4)   Damages – that the party claiming the breach suffered damages that were caused by the breach.  Causation exists if the breaching party's conduct was a substantial factor in bringing about the harm.

### 1.   Contract

As to the first element, there is no dispute that the parties entered three separate written agreements: first, the Joint Development Agreement dated November 10, 2004; second, the Manufacturing Agreement dated April 14, 2005; and third, the Addendum to the Joint Development Agreement dated September 27, 2005.

### 2.   Performance

As to the second element, you must find by a preponderance of the evidence that MacDermid did what the contract required it to do as of the time it claims that Cortron breached the contract.  Only a material breach of the contract by MacDermid would excuse any subsequent nonperformance by Cortron.  A breach of contract is material if it deprives a party of a substantial benefit that the party reasonably expected to receive under the terms of the contract. In other words, if you find that MacDermid itself committed a material breach of the contract before any breach by Cortron, you must find in favor of Cortron on MacDermid's breach of contract claim.

### 3.   Breach

As to the third element, a contract is breached when there is a failure by a party to perform ~~its obligations~~ a material obligation under the contract.  ~~Here, MacDermid claims that Cortron engaged in behavior that breached the Joint Development Agreement in a variety of ways, including but not limited to: failure and refusal to manufacture, service, and provide parts for equipment, failure to provide equipment that met the specifications and/or time schedule provided in the agreement, and failure to deliver to MacDermid equipment and engineering drawings.  It also claims that Cortron engaged in behavior that breached the Manufacturing~~

~~Agreement in a variety of ways, including but not limited to: failure to safeguard properly MacDermid's proprietary information and improper interference with MacDermid's title and ownership to MacDermid's intellectual property and proprietary information.  Any single~~ <u>Any single material</u> breach that you find has been proven by a preponderance of the evidence may entitle MacDermid to damages.

### 4. Damages

In order to prove that Cortron is liable for breach of contract, MacDermid must prove the fourth element by a preponderance of the evidence, in that it suffered damages that were caused by the breach.  Causation exists if the breaching party's conduct was a substantial factor in bringing about the harm.  I will discuss how you should calculate damages, if you find Cortron liable for breach of contract, after I discuss the other claims in the case.

## B. VIOLATIONS OF FEDERAL ANTITRUST LAWS

MacDermid claims that Cortron has violated Section 1 of the Sherman Act~~.  The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace~~.  Section 1 of the Sherman Act prohibits contracts, combinations and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act claim, MacDermid must prove the following four elements by a preponderance of the evidence:

(1) Conspiracy – a contract, combination, or conspiracy existed between Cortron and at least one other separate entity;

(2) Unreasonable Restraint of Trade – the contract, combination or conspiracy unreasonably restrains trade;

(3) Impact on Interstate Commerce – the restraint affects interstate commerce; and

(4) Injury and Causation – the restraint caused MacDermid to suffer an injury to its business or property.

<u>If you find that plaintiffs have failed to prove any of these elements, then you must find for Cortron and against MacDermid on this claim.  If you find that MacDermid has proven all of</u>

16

the elements by a preponderance of the evidence, then you must find for MacDermid and against Cortron on this claim. I will now explain each of these elements to you.

### 1. Conspiracy

As I have just told you, the first element that MacDermid must prove is that Cortron entered into an unlawful agreement or conspiracy. This is important because the part of the Sherman Act that we are concerned with outlaws certain joint activities by competitors, but not actions taken by a single firm or corporation.

A conspiracy is formed when two or more people or corporations join together to accomplish some unlawful purpose by acting together. The essence of a conspiracy is an agreement between two or more people or corporations to violate or disregard the law. Thus, in order to meet its burden of proof on the first element, MacDermid must prove that Cortron, with another, came to a common and mutual understanding to accomplish or attempt to accomplish an unlawful purpose.

~~It is not necessary for MacDermid to name as a defendant every entity that it claims participated in the unlawful agreement or conspiracy. A plaintiff injured by such an agreement may recover against one or all who participated. This is true even if it appears that the role of the unnamed participant may have been greater than that of the party MacDermid did name as a defendant.~~

### 2. Unreasonable Restraint of Trade

A restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether any agreement that you find exists between Cortron and DuPont regarding Cortron's relationship with MacDermid – which I will sometimes called the "challenged

17

restraint" – is or was unreasonable. In making this determination, you must first determine whether MacDermid has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If MacDermid has proven that any agreement that you find exists between Cortron and DuPont regarding Cortron's relationship with MacDermid resulted in a substantial harm to competition in a relevant market, then you must consider whether the challenged restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. I will now review each step of the analysis in more detail.

(a) Proof of Competitive Harm

In order to prove that the challenged restraint is unreasonable, MacDermid must first demonstrate that the challenged restraint has resulted in a substantial harm to competition in an identified market, known as a "relevant market." Although it may be relevant to the inquiry, harm that occurs merely to an individual business is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition in a relevant market. There are two aspects to a relevant market: relevant product market and relevant geographic market. It is MacDermid's burden to prove the existence of a relevant market.

i. *Relevant Product Market*

In this case, MacDermid contends that the relevant product market is the market for thermal processors for developing flexographic printing plates.

18

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a buyer or consumer believes are reasonable interchangeable or reasonable substitutes for each other.  This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives to each other, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant, permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another.  Generally speaking, a small but significant, permanent increase in price is approximately a five percent increase in price not due to external cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) customers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized sellers; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of the plaintiff and

19

defendant regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

If you find that MacDermid has proven a relevant product market consisting of thermal processors for developing flexographic printing plates, then you should continue to evaluate the remainder of its antitrust claim. If you find that MacDermid has failed to prove such a relevant product market, then you must enter a verdict for Cortron on the antitrust claim.

ii. *Relevant Geographic Market*

The relevant geographic market is the geographic area in which a product faces competition from other products that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both geographic areas are in the same relevant geographic market. The geographic market may be as large as worldwide or nationwide, or as small as a single town or even smaller.

MacDermid has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, MacDermid claims that the relevant geographic market is the United States. In determining whether MacDermid has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which the product is sold and where customers are located;

- The geographic area to which customers turn for supply of the product;

- The geographic area to which customers have turned or have seriously considered turning;

20

- Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain regions.

If you find that MacDermid has proven that the United States is the relevant geographic market, then you should consider the remaining elements of its antitrust claim.   If you find that MacDermid has failed to prove such a relevant geographic market, then you must enter a verdict for Cortron on the antitrust claim.

\* \* \*

You must next determine whether MacDermid also has proven that the challenged restraint had a substantial harmful effect on competition in the relevant product and geographic market.   A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality.  To determine whether the challenged restraint has produced competitive harm, you may look at the following factors: the effect of the challenged restraint on prices, output, product quality and service; the purpose and nature of the challenged restraint; the nature and structure of the relevant market, both before and after the challenged restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the challenged restraint was imposed; and whether, in this case, Cortron or DuPont possesses "market power" in the relevant geographic and product markets

Market power is an ability profitably to raise prices above those that would be charged in a competitive market for a sustained period of time.   A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power.  The ability to charge higher prices for better products or services, however, is not market power.  An important factor in determining market power is

21

market share; that is, the percentage of the products or services sold in the relevant market by all competitors in that relevant market.   Other factors in determining market power include profit margin, the existence of patents, barriers to market entry, the history of entry and exit by other companies, the number and size of competitors, and the power of the buyers in the industry.  If Cortron or DuPont does not possess market power in the relevant market, then it is less likely that the challenged restraint has resulted in a substantial effect on competition in the relevant product and geographic market.

(b) Evidence of Competitive Benefits

If you find that MacDermid has proved that the challenged restraint resulted in substantial harm to competition in a relevant product and geographic market, then you must next determine whether the challenged restraint also nonetheless benefits competition in other ways. If you find that the challenged restraint does result in competitive benefits, then you must also consider whether the challenged restraint was reasonably necessary to achieve the benefits.  If MacDermid proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the challenged restraint.

(c) Balancing the Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same challenged restraint.  If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not

22

unreasonable.    In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.

### 3.  Impact on Interstate Commerce

The Sherman Act applies only to conduct or restraints that affect interstate commerce. MacDermid may prove this element in either one of two ways.  First, MacDermid may show that Cortron's conduct or restraint was imposed directly upon goods or services in the flow of interstate commerce – that is, goods or services moving from one state to another. If you find that Cortron's activities were directly imposed on goods or services directly in the flow of interstate commerce, then the amount, quantity, or value of interstate commerce involved or affected is not important.    Second, and alternatively, MacDermid may show that Cortron's conduct or restraint had a substantial effect on interstate commerce.  Either method is sufficient, by itself, to establish this element.

To affect interstate commerce, it is not necessary that the conduct or restraint itself occur in multiple states or directly affect transactions that span across multiple states.  It is enough if some activities that were affected by the conduct or restraint had some effect on interstate commerce.

### 4.  Injury and Causation

Finally, MacDermid must establish injury and causation.  More specifically, MacDermid is entitled to recover damages if it can establish three elements of injury and causation:

> (a) That MacDermid was in fact injured as a result of Cortron's alleged violation of the antitrust laws;
>
> (b) that Cortron's alleged illegal conduct was a material cause of MacDermid's injury; and

23

(c) that MacDermid's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For MacDermid to establish that it is entitled to recover damages, it must prove that its business or property was injured as a result of Cortron's alleged violation of the antitrust laws. Proving the fact of damage does not require MacDermid to prove the dollar value of its injury. It requires only that MacDermid prove that it was in fact injured by Cortron's alleged antitrust violation. If you find that MacDermid has established that it was in fact injured, you may then consider the amount of MacDermid's damages; I will instruct you on damages later. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that MacDermid has established that it was in fact injured.

The term "business" includes any commercial interest or venture, and you are instructed that MacDermid has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Cortron's alleged antitrust violation. The term "property" includes anything of value MacDermid owns, possesses, or in which MacDermid has a protectable legal interest. You are instructed that MacDermid has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Cortron's alleged antitrust violation. You are further instructed that MacDermid has been injured in its "property" if you find that it has lost money as a result of Cortron's alleged antitrust violation.

MacDermid must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Cortron's alleged illegal conduct was a material cause of MacDermid's

24

injury.  This means that MacDermid must prove that some damage occurred to it as a result of Cortron's alleged antitrust violation, and not some other cause.   MacDermid ~~is not required to prove that Cortron's alleged antitrust violation was the sole cause of its injury; nor need MacDermid eliminate all other possible causes of injury.  It is enough if MacDermid has proved that the alleged antitrust violation was a material cause of its injury.  However, if you find that MacDermid's injury was caused primarily by something other than the alleged antitrust violation, then you must find that MacDermid has failed to prove that it is entitled to recover damages from Cortron.~~ must show that its injury  flows from that which makes Cortron's acts allegedlyunlawful, and that but for the alleged violation, the injuries would not have occurred. An essential element in MacDermid's claim is that the injuries alleged would not have occurred but for Cortron's alleged antitrust violation.  In order to satisfy the antitrust injury requirement, MacDermid must establish that the injuries would not have occurred but for Cortron's alleged antitrust violations.

An antitrust violation need not be the sole cause of the alleged injuries, but MacDermid must establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury.[1]

Finally, MacDermid must establish that its injury is the type of injury that the antitrust laws were intended to prevent.   This is sometimes referred to as "antitrust injury."   If

---

[1] "A plaintiff must show that its injury 'flows from that which makes defendants' acts unlawful,' that 'but for' the alleged violation, the injuries would not have occurred."  *World Wrestling Entn't, Inc. v. Jakks, Pac., Inc.*, 425 F. Supp. 2d 484, 519 (S.D.N.Y. 2006) (quoting *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993)); *see also Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 41 (2d Cir. 1986) ("An essential element in plaintiff[']s claim is that the injuries alleged would not have occurred but for [defendants'] antitrust violation."); *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y., Inc.*, 198 F.R.D. 41, 46 (E.D.N.Y. 2000) ("In order to satisfy the antitrust injury requirement, the plaintiff[] must establish that the injuries would not have occurred but for the defendants' antitrust violations."(quotations omitted)).

"An antitrust violation need not be the sole cause of the alleged injuries, but the plaintiff must establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury." *Greater Rockford Energy*, 998 F.2d at 401; accord *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1494 (8th Cir. 1992) ("The case law is clear … that the treble-damage plaintiff may not recover for losses due to factors other than the defendant's anticompetitive violations.").

MacDermid's injury was caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then MacDermid's injuries are antitrust injuries.  On the other hand, if MacDermid's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then MacDermid's injuries are not antitrust injuries and MacDermid may not recover damages for those injuries under antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against – such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit – and the antitrust laws do not permit MacDermid to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if MacDermid can establish that it was in fact injured by Cortron's conduct, that Cortron's conduct was a material cause of MacDermid's injury, and that the injury was the type that the antitrust laws were intended to prevent, then MacDermid is entitled to recover damages for the injury to its business or property.

## C.  [VIOLATION OF CONN. GEN. STAT. § 35-26

MacDermid alleges that Cortron violated Section 35-26 of Connecticut's statues, which is part of Connecticut's Antitrust Act.  Like Section 1 of the Sherman Act, Section 35-26 states: "Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful." Conn. Gen. Stat. § 35-26.  You should apply the same law to this claim for violation of the Connecticut Antitrust Act that you did for MacDermid's claim for violation of Federal Antitrust laws.**]**

**D.  [VIOLATION OF CONN. GEN. STAT. § 35-28**

MacDermid also alleges that Cortron violated subsections (b) and (d) of Section 35-28 of Connecticut's statues.  That law states, in the pertinent part: "Without limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of . . . (b) fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale, or supply of any party of trade or commerce; . . . . or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person."  Conn. Gen. Stat. § 35-28.  You should apply the same law to this claim for violation of the Connecticut Antitrust Act that you did for MacDermid's claim for violation of Federal Antitrust laws.**]**

**E.  MISAPPROPRIATION OF TRADE SECRETS ("CUTSA")**

MacDermid claims that Cortron misappropriated MacDermid's trade secrets in violation of the Connecticut Uniform Trade Secrets Act – which I will refer to as "CUTSA."  To recover under CUTSA, MacDermid must prove the following three elements by a preponderance of the evidence:

(1)    Trade Secret – the existence of a trade secret possessed by MacDermid;

(2)    Misappropriation – Cortron misappropriated MacDermid's trade secret; and

(3)    Injury – MacDermid sustained an actual loss as a result of Cortron's misappropriation of a trade secret, or Cortron was unjustly enriched by such misappropriation

I will now explain each of these elements in further detail.

**1.  Trade Secret**

The first element that MacDermid must prove to establish its CUTSA claim is that it possessed a trade secret.  The term "trade secret" means information, including a formula,

pattern, compilation, program, device, method, technique, process, drawing, cost data, or customer list that:

> (a) derives actual or potential independent economic value (even if the information gives its owner only a slight competitive advantage) from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Absolute secrecy is not required for protection under CUTSA. CUTSA requires the owner of the secret to take reasonable efforts under the circumstances to maintain secrecy. A trade secret owner does not abandon his secret by delivering it or a copy to another for a restrictive purpose, nor by a limited publication. Sufficient secrecy must exist such that there would be difficulty in acquiring the information except by the use of improper means. "Improper means" includes theft, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.

To be protected under CUTSA, a trade secret must be a particular secret of MacDermid's, as distinguished from general secrets of the trade in which MacDermid is engaged, which are not protected. However, a trade secret can exist in the unique combination of otherwise known components — although each of its parts, by themselves, may be in the public domain, the compilation of the information may be the essence of the secret.

In determining whether MacDermid has proven the existence of a trade secret by a preponderance of the evidence, you may give consideration to the following factors:

28

       (1)     the extent to which the information is known outside of MacDermid;

       (2)     the extent to which the information is known by MacDermid's employees and others involved in the business;

       (3)     the extent of measures taken by MacDermid to guard the secrecy of the information;

       (4)     the value of the information to MacDermid and to its competitors;

       (5)     the amount of effort or money expended by MacDermid in developing the information; and

       (6)     the ease or difficulty with which the information could be properly acquired or duplicated by others.

In considering these factors, you should not necessarily give more weight to any one of them, but should evaluate the evidence as a whole, keeping in mind that the essential characteristic of a trade secret is secrecy and that the secret or confidential nature of the information must be established in order to qualify for trade secret protection.

### 2. Misappropriation

The second element that MacDermid must prove is that Cortron misappropriated MacDermid's trade secret. In this case, the term "misappropriation" means disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

### 3. Injury

29

For the third element of its CUTSA claim, MacDermid must prove that it sustained an actual loss as a result of Cortron's misappropriation of trade secrets, or that Cortron was unjustly enriched by such misappropriation. Unjust enrichment is a measure of damages that reflects that it is contrary to equity and good conscience for a party to retain a benefit that has come to it at the expense of the other party. MacDermid is entitled to damages for unjust enrichment if it can prove that:

> (a) Cortron benefitted from the misappropriation and use or disclosure of MacDermid's trade secrets;
>
> (b) Cortron did not pay MacDermid for those benefits; and
>
> (c) the failure to pay MacDermid was to MacDermid's detriment.

**F. COMPUTER ~~CRIMES~~<u>RELATED OFFENSES</u>**

<u>MacDermid claims that Cortron has committed certain computer crimes.</u>

<u>To prevail on MacDermid's computer crimes claim against Cortron, MacDermid has the burden of proving:</u>

~~The law allows a person or company who is the victim of a computer crime to sue in a civil case for damages against the person or company who committed the crime. Even though this is referred to as a computer crime, the standard of proof is still preponderance of the evidence. MacDermid claims that Cortron has committed the computer crime of misuse of computer system information. A person or company is guilty of this crime when it intentionally or recklessly and without authorization alters, deletes, tampers with, damages, destroys or takes data intended for use by a computer system, whether residing within or external to a computer~~

30

~~system.  In order to prove that Cortron committed a computer crime, MacDermid must prove four elements:~~

~~(1)~~(1) that Cortron altered, deleted, tampered with, damaged, destroyed or took data intended for use by a computer system;

~~(2)~~(2) that Cortron acted without authorization;

~~(3)~~(3) that Cortron's actions were intentional or reckless; and

~~(4)~~(4) that Cortron's actions caused damage to MacDermid's business or property.

## G.  UNFAIR TRADE PRACTICES ACT ("CUTPA")

MacDermid's final claim is that Cortron violated a Connecticut law known as the Connecticut Unfair Trade Practices Act – which I will refer to as "CUTPA."  To prevail on this claim, MacDermid must establish by a preponderance of the evidence each of the following three elements:

(1)    Cortron engaged in an unfair method of competition, or an unfair act or practice;

(2)    such conduct was carried out in the course of trade or commerce; and

(3)    such conduct caused MacDermid to sustain an ascertainable loss.

### 1.  Unfair Competition or Trade Practice

As the first element of MacDermid's CUTPA claim, MacDermid must prove that Cortron's conduct constituted an unfair trade practice.  A trade practice is unfair if:

(a) it offends a public policy established by statute, the common law, or another established concept of unfairness; or

(b) it is immoral, unethical, oppressive, or unscrupulous; or

(c) it causes substantial injury to consumers, competitors, or other business persons.

31

All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. With respect to criterion (c), MacDermid must establish that Cortron's conduct caused an injury that is substantial, that is not outweighed by countervailing benefits to consumers or competition, and that consumers or competitors could not have reasonably avoided.

### 2.  Course of Trade or Commerce

In order to prove the second element of its CUTPA claim, MacDermid must show that Cortron's actions were carried out in the course of its trade or commerce. An action is carried out in the defendant's trade or commerce if it is part of the advertising, sale, offering for sale, or distribution of any services or products, or any other article, commodity, or thing of value in Connecticut. The conduct at issue must have occurred in Cortron's primary trade or business – it must not be merely incidental to Cortron's trade or business. If you do not find that the conduct occurred in the course of Cortron's trade or commerce, you must find that there was no CUTPA violation.

### 3.  Ascertainable Loss

If you find that Cortron engaged in an unfair trade practice in the course of trade or commerce, MacDermid is entitled to damages if it proves that it sustained an ascertainable loss as a result of Cortron's actions. A loss is a deprivation, detriment, or injury. A loss is ascertainable if it is capable of being discovered, observed, or established.

MacDermid must also prove that Cortron's action in violation of CUTPA was an actual cause that was a substantial factor in bringing about the ascertainable loss claimed by MacDermid. First, MacDermid must prove that the alleged violation of CUTPA was an actual

32

cause of the harm.  If the harm would have occurred regardless of the alleged CUTPA violation, then the violation was not an actual cause of MacDermid's ascertainable loss.  Second, MacDermid must prove that Cortron's alleged CUTPA violation was the proximate cause of MacDermid's ascertainable loss, that is, a substantial factor in bringing about the loss.

**PART III: CORTRON'S COUNTERCLAIMS IN THIS CASE**

Cortron has brought ▮ counterclaims against MacDermid.  I will now explain the law applicable to each counterclaim.

## A.  BREACH OF CONTRACT

Cortron's first counterclaim is for breach of contract. ~~Here, Cortron claims that MacDermid engaged in behavior that breached the parties' contracts in a variety of ways, including but not limited to: failure to indemnify Cortron properly, failure to supply Cortron with all parts necessary to manufacture the LAVA machines, failure to pay Cortron for engineering work done, and failure to cooperate in the development of certain products~~.  As I explained earlier, to establish a breach of contract claim, a party must prove four basic propositions, or "elements": contract, performance, breach, and injury.  Recall that there are three separate written agreements at issue: first, the Joint Development Agreement dated November 10, 2004; second, the Manufacturing Agreement dated April 14, 2005; and third, the Addendum to the Joint Development Agreement dated September 27, 2005.  The instructions that I gave you for MacDermid's breach of contract claim in Section II.A. also apply to Cortron's breach of contract claim.  If you find that Cortron has proved all four elements of its breach of contract claim by a preponderance of the evidence, then your verdict must be for Cortron on this claim, unless you find that an affirmative defense applies.  The fact that I am not repeating the entire breach of

33

contract instruction here should not lead you to give any less careful attention to Cortron's breach of contract counterclaim than to MacDermid's breach of contract claim.

With respect to any liability for breach of contract for failure to indemnify Cortron properly, MacDermid asserts that even if Cortron can prove that MacDermid breached the indemnification provision, Cortron has waived its rights under that provision.  Waiver is an affirmative defense, and MacDermid bears the burden of proving this affirmative defense.  If MacDermid proves its affirmative defense by a preponderance of the evidence, then your verdict must be for MacDermid on Cortron's claim for breach of contract for failure to indemnify Cortron properly.  This affirmative defense does not affect Cortron's other specific claims of breach of contract.

You have heard testimony and evidence about whether MacDermid Printing Solutions LLC ("MacDermid") infringed U.S. Patent No. 6,797,454 ( "'454 Patent") owned by E.I. du Pont Nemours and Company ("Dupont").  I instruct you that MacDermid stipulated earlier in this case that Cortron does not need to prove actual infringement in order to prove its counterclaims or defenses.  Accordingly, with regard to Cortron's breach of contract counterclaim, as well as its counterclaims of fraud, negligent misrepresentation, breach of good faith and fair dealing and unfair trade practices, Cortron need not prove that MacDermid actually infringed the '454 patent in order to prevail on those claims.

MacDermid claims that it did not have to indemnify Cortron for the lawsuit filed against Cortron by DuPont because Cortron gave up or "waived" its right to have MacDermid perform this obligation.  In order to show waiver, MacDermid must prove two elements:

(1)     That Cortron knew MacDermid was required to indemnify Cortron for the lawsuit filed by DuPont; and

34

(2)    That Cortron freely and knowingly gave up its right to have MacDermid perform this obligation.

A waiver may be oral or written or may be inferred from circumstances that show that Cortron gave up its right. If MacDermid proves that Cortron gave up its right to MacDermid's performance of the indemnification obligation, then MacDermid was not required to perform that obligation, and you must find in MacDermid's favor with respect to that particular claim of breach. If you find that MacDermid breached the indemnification provision and that MacDermid failed to prove that Cortron's conduct constituted an intentional relinquishment of its indemnification rights, then you must find in favor of Cortron on the claimed breach of the indemnification obligation.

## B.  UNFAIR TRADE PRACTICES ACT ("CUTPA")

Cortron also counterclaims against MacDermid for violation of CUTPA. You should use the same instructions that I gave in you Section II.G. to evaluate this counterclaim. Therefore, to prevail on this counterclaim, Cortron must establish by a preponderance of the evidence each of the following three elements: MacDermid engaged in an unfair method of competition, or an unfair trade practice; such conduct was carried out in the course of trade or commerce; and such conduct proximately caused Cortron to sustain an ascertainable loss. The fact that I am not repeating the entire CUTPA instruction here should not lead you to give any less careful attention to Cortron's CUTPA counterclaim than to MacDermid's CUTPA claim.

## C.  [WRITTEN AND] ORAL FRAUD

Cortron counterclaims that MacDermid made a fraudulent misrepresentation that MacDermid intended to provide Cortron with significant manufacturing business, and that this representation induced Cortron to enter into a transaction with MacDermid to which it would not

35

~~have become a party if MacDermid had not engaged in fraud~~<u>fraudulent misrepresentations</u>. To prevail on this counterclaim, Cortron must prove:

(1)    There was a representation of an existing fact;

(2)    the representation was untrue, and either known by MacDermid to be untrue or made with reckless disregard for the truth of the matter;

(3)    the representation was made for the purpose of inducing Cortron to act upon it; and

(4)    Cortron acted upon the representation to its injury.

It is important to note that the first three elements must be proved by clear and convincing evidence, which is a higher evidentiary standard than the preponderance of the evidence.  Clear and convincing evidence is evidence that establishes for you a very high probability that the facts asserted are true or exist.

With respect to the first element, in order for a representation to be the basis of an action for fraud, it must be definite and certain, not vague or equivocal.  It must be a representation of fact, not a mere expression of opinion.  With respect to the second element, no action for fraud can be based on a representation that is true.  It is not enough for Cortron merely to prove that a representation was untrue; Cortron must also prove that the representation was known to be untrue by MacDermid when it was made or that MacDermid made the representation with reckless disregard for its truth or falsity.

<u>With regard to Cortron's claim that MacDermid made a fraudulent misrepresentation as to whether it infringed a third party's intellectual property rights, Cortron does not need to prove that the statement was, in fact, false, but only needs to prove that MacDermid made a statement that it believed it to be false, that it made the statement for the purpose of inducing Cortron to act upon it and that Cortron did, in fact, act upon the misrepresentation.</u>

36

**D.  NEGLIGENT MISREPRESENTATION**

Cortron also counterclaims that MacDermid ~~negligently misrepresented that MacDermid intended to provide Cortron with significant manufacturing business.~~ <u>made negligent misrepresentations</u> To prevail on this counterclaim, Cortron must prove four elements by a preponderance of the evidence:

(1)  MacDermid made a misrepresentation of fact;

(2)  MacDermid failed to exercise reasonable care in obtaining or communicating the representation;

(3)  MacDermid supplied the representation to induce Cortron to act on it; and

(4)  Cortron justifiably relied on this representation to its injury.

<u>With regard to Cortron's claim that MacDermid made a negligent misrepresentation as to whether it infringed a third party's intellectual property rights, Cortron does not need to prove that the statement was, in fact, false, but only needs to prove that MacDermid made a statement that it had reason to believe was false, that it made the statement for the purpose of inducing Cortron to act upon it and that Cortron did, in fact, act upon the misrepresentation.</u>

**E.  BREACH OF GOOD FAITH AND FAIR DEALING**

Cortron next counterclaims that MacDermid breached the covenant of good faith and fair dealing.  Every contract contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other party to receive the benefits of the contract.  The concept is essentially a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended.  It is not a separate contractual claim and the covenant cannot be applied to achieve a result contrary to the clearly expressed terms of the contract between the parties.

37

Here, MacDermid had an obligation to exercise good faith when performing its obligations specified in the contracts between MacDermid and Cortron.  You must decide whether MacDermid fulfilled its obligation to exercise good faith.

Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.  Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose and freedom from intention to defraud.  It means being faithful to one's duty and obligation under the contract.

Good faith is defined as the opposite of bad faith.  If MacDermid engaged in bad faith you must find that it did not fulfill the covenant.  Bad faith generally implies a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties.  Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose.  Bad faith contemplates a state of mind affirmatively operating with furtive design or ill will.

**F.  UNJUST ENRICHMENT**

Cortron seeks to recover the value of services it provided because MacDermid was allegedly unjustly enriched by the Cortron's provision of services.  Unjust enrichment is a measure of damages that reflects that it is contrary to equity and good conscience for a party to retain a benefit that has come to it at the expense of the other party.  In this context, it applies only if you find that MacDermid was unjustly enriched by work performed by Cortron that was not the subject of an enforceable contract.  A contract enforceable at law precludes the remedy of unjust enrichment. Therefore, if you have determined that Cortron could recover for specific

38

breaches of contract, then you may not consider Cortron's unjust enrichment counterclaim with respect to the acts underpinning those specific breaches.

## G.  QUANTUM MERUIT

Cortron's final counterclaim alleges  quantum meruit.  Quantum meruit allows Cortron to recover from MacDermid in situations where no express contract has been entered into by the parties.  Quantum meruit is an equitable remedy of restitution by which a party may recover the reasonable value of the services rendered in situations where no express contract has been entered into by the parties.  If you find that the services rendered by Cortron for MacDermid were not covered by an express contract, you may award Cortron the reasonable value of Cortron's services under quantum meruit.

## PART IV: DAMAGES

## A.  GENERAL INSTRUCTIONS ON DAMAGES

If MacDermid fails to prove the elements of its claims against Cortron, then Cortron has prevailed on the issue of liability and you should not consider the issue of damages for MacDermid's claims.  Only if MacDermid has proven, by a preponderance of the evidence, that Cortron is liable should you address the issue of damages for MacDermid's claims.  Similarly, if Cortron fails to prove the elements of its counterclaims against MacDermid, then MacDermid has prevailed on the issue of liability and you should not consider the issue of damages for Cortron's counterclaims.  Only if Cortron has proven, by a preponderance of the evidence, that MacDermid is liable should you address the issue of damages for Cortron's counterclaims.

Before I instruct you on the issue of damages, a few words of caution are in order.  The fact that I am instructing you on the subject of damages does not mean that I have an opinion one way or the other on whether you should or should not reach the issue of damages in your

deliberations.  Again, you are only to reach the issue of damages if you find by a preponderance of the credible evidence that each party has established its claim or counterclaim.

In respect to the damages claimed, as in respect to every other matter before you, you can award only such damages as are justified by the proof and the law.  The burden is on the each party to satisfy you by a fair preponderance of the evidence as to the extent and nature of the losses suffered as a result of the acts of the opposing party.  It is not the opposing party's burden to disprove the claimed losses.  Any award of damages shall be measured in dollars and cents.

Our law permits counsel for any party to argue to the jury his or her view of the proper amount of damages.  You should understand that what a lawyer says about the amount of damages is not evidence but only argument.  The determination of the amount to be awarded, if any, is solely your function and in your deliberations you may accept or disregard counsel's argument on the amount of damages.

**B.  COMPENSATORY DAMAGES – GENERAL INSTRUCTIONS**

The instructions for this Section apply to damages for the claims and/or counterclaims. In addition, I will give you more specific instructions for determining damages as to specific claims and counterclaims.

### 1.  Purpose of Compensatory Damages

The purpose of compensatory damages is to compensate a party for the damages inflicted on it by any violations of the law that it has proven.  They are not awarded to punish a party for its unlawful actions.  Compensatory damages are limited to restoring a party, as far as money can, to the position it would have been in had the harm not occurred.

If you find in favor of either party, it is entitled to recover any economic loss proved – that is, the loss that is a result of the other's party conduct and that was reasonably foreseeable to the other party as the natural and probable results of its conduct.

The law places the burden on each party to prove facts that will enable you to arrive at the amount of damages with reasonable certainty.  This is not a requirement of mathematical precision and you are permitted to determine the amount of damages by estimation or approximation, as long as each party provides you with a reasonable basis for such estimation or approximation, such that you are not required to make a calculation by guessing or speculation. You should be guided by dispassionate common sense.

### 2.  Mitigation

You are also instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize those damages.  The law imposes on an injured person the duty to take advantage of reasonable opportunities it may have to prevent the aggravation of its injuries, so as to reduce or minimize the loss or damage.

If you find Cortron is liable and that MacDermid has suffered damages, MacDermid may not recover for any item of damage it could have avoided through reasonable effort.  If you find that MacDermid is liable on Cortron's counterclaims and that Cortron has suffered damages, Cortron may not recover for any item of damage it could have avoided through reasonable effort. If either party unreasonably failed to take advantage of an opportunity to lessen its damages, you should deny recovery for those damages that it would have avoided had it taken advantage of the opportunity.

41

Bear in mind that the question whether MacDermid or Cortron acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured party to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured party to exert itself unreasonably or incur unreasonable expense in an effort to mitigate, and the burden is on the party who caused the injury to prove by a preponderance of the evidence that the damages reasonably could have been avoided.  In deciding whether to reduce MacDermid's or Cortron's damages due to a failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case.

### 3.  Duplication of Damages

Even if you find that a party has proven that it suffered damages, you may not award it more in compensatory damages than will reasonably compensate it for the injury or loss that it has suffered.  A party may not recover more than once for the same loss, even if it prevails on two or more causes of action.  Therefore, if you find that any compensatory damages should be awarded to either party, you should review your Verdict Form to be sure that the total amount of any compensatory damage award does not compensate any party more than once for a particular loss.

## C.  COMPENSATORY DAMAGES – SPECIFIC INSTRUCTIONS

### 1.  Breach of Contract

#### (a) Benefit of the Bargain

Any damages you award for breach of contract should be designed to place the non-breaching party, so far as can be done by money, in the same position as that which it would have been in had the contract been fully performed.  You should determine the fair and

42

reasonable value, in money, of the position the non-breaching party would have been in if the breaching party had fully performed the contract. Then you should determine the fair and reasonable value, in money, of the position the non-breaching party was in at the time of the breaching party's breach of the contract. The difference between the amount for performance and the amount for breach should be your award.

### (b) Consequential and Incidental Damages

Any damages you award on the breach of contract claim or counterclaim~~—~~, with the exception of the Manufacturing Agreement, may include amounts to compensate the party for consequential and incidental damages. Consequential damages are damages that are reasonably foreseeable to the breaching party as the natural and probable results of its breach. If you find that certain damages were reasonably foreseeable to the breaching party as the natural and probable results of its breach, then your award should include the fair and reasonable value of these as consequential damages. Incidental damages are reasonable expenses incident to the breach. If you find that the non-breaching party reasonably incurred incidental costs either in responding to the breach or in securing the benefit that the other party's performance was to have provided, then you should award the fair and reasonable value of those costs as incidental damages.

### ~~(c) Prejudgment Interest~~

~~If you decide to award breach of contract damages to either party, you will also have to decide whether that party is entitled to an award of interest on the amount of damages, which is called "prejudgment interest." If you decide that prejudgment interest should be awarded, the actual calculation of this interest will be done by the court at a later point in time.~~

43

Prejudgment interest is intended to compensate the party for the loss of money that was not paid when it was due. To award interest, you must find that the party is entitled to an award of damages in the first place, and you must determine whether, under all of the circumstances, the party has proven that the other party wrongfully detained money that was due. The main factor for you to consider in awarding prejudgment interest is whether, at some point in the past, one party wrongfully detained money it owed to the other party. There is no hard and fast rule for what constitutes wrongful detention. The question is whether justice requires that the party be paid interest for the loss of use of money.

### 2. Antitrust

MacDermid's claims for violations of the Sherman Act and the Connecticut Antitrust Act are all claims for damages arising out of antitrust violations, and as such, they all have the same measure of damages.

MacDermid claims that it was harmed because it lost profits as a result of Cortron's alleged antitrust violation. If you find that Cortron committed an antitrust violation and that violation caused injury to MacDermid, you may calculate the profits, if any, that MacDermid lost as a result of Cortron's antitrust violation. To calculate lost profits you must calculate net profit: the amount by which MacDermid's gross revenues could have exceeded all of the costs and expenses that would have been necessary to produce those revenues. You may calculate net profit by using the following measure:

MacDermid has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of its actual net profits in a period before the antitrust violation. If you find that the earlier period is a reliable guide to estimate what MacDermid's actual net profits would have been later, in the absence of the antitrust violation,

44

then you may calculate MacDermid's lost profits by comparing (a) MacDermid's actual net profits in the earlier period with (b) MacDermid's actual net profits (or loss) thereafter. You may find, however, that MacDermid's profits in the prior period are not representative of what its profits would have been during the period in which the antitrust violation is alleged to have occurred, such as if MacDermid's profits were impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors. If you find that the prior period is not representative of the later period, and that lost profits in the later period may only be calculated using speculation or guess work, you may not award damages for lost profits based on the prior period.

### 3. CUTSA

If MacDermid proves that Cortron misappropriated a trade secret, you must determine what amount of damages to award. MacDermid has alleged that Cortron was unjustly enriched by the misappropriation of its trade secrets. Under these circumstances, if you find liability, the law allows MacDermid to recover a "reasonable royalty" from Cortron to place a value on the trade secret that was misappropriated.

To set a reasonable royalty, you must determine how much money MacDermid would have hypothetically accepted and how much Cortron would have hypothetically paid in order to allow Cortron to disclose and use MacDermid's trade secrets as Cortron allegedly did. To determine this amount, you may consider the following non-exhaustive list of factors:

(1)     Any amounts received by the trade secret owner for disclosure of the trade secrets in the past, proving or tending to prove an established royalty;

(2)     The amounts paid by the misappropriator to use or disclose comparable trade secrets in the past;

(3)     The nature and scope of any agreement to allow the use or disclosure of comparable trade secrets in the past;

45

(4)    The trade secret owner's established policy to maintain the trade secret by not disclosing it to others or only disclosing it under conditions of secrecy;

(5)    The commercial relationship between MacDermid, Cortron, and DuPont, such as whether they are competitors in the same territory in the same line of business;

(6)    The collateral benefits the misappropriator received by disclosing or using the trade secret;

(7)    The probability that the trade secret owner would have maintained its secrecy;

(8)    The established profitability of the products made by the trade secret; its commercial success; and its current popularity;

(9)    The utility and advantages of the trade secret over other modes and devices, if any, that had been used for working out similar results;

(10)    The nature of the trade secret; the character of the commercial embodiment of it as owned and produced by the trade secret owner; and the benefits to those that have used the trade secret;

(11)    The extent to which the misappropriator has made use of the trade secret and evidence probative of the value of that use;

(12)    The payment that may be customary in the particular business or in comparable businesses to allow for the use or disclosure of the trade secret or analogous trade secrets;

(13)    The portion of the realizable profit that should be credited to the trade secret as distinguished from non-protected elements, the manufacturing process, business risks, or significant features or improvements added by the misappropriator;

(14)    The opinion testimony of qualified experts;

(15)    The amount that the trade secret owner and the misappropriator would have agreed upon at the time of the misappropriation if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent misappropriator – who desired, as a business proposition, to use or disclose the trade secret – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent trade secret owner who was willing to allow the trade secret to be used or disclosed.

## 4.    Unjust Enrichment and Quantum Meruit

Any damages you award for unjust enrichment and/or quantum meruit are determined by the value of the benefit provided to the party who received the benefit. The party who conferred

46

the benefit must prove the fair and reasonable value of the benefit.  You may not award damages to the same party for both unjust enrichment and quantum meruit.

### 5.  Computer Crimes

If MacDermid proves that Cortron ~~committed a computer crime~~is liable for computer-crimes, ~~it~~ MacDermid may recover damages for the amount of the actual loss ~~it~~ MacDermid proves was caused by Cortron's computer crimes.  MacDermid may also recover damages for Cortron's unjust enrichment caused by the computer crime that is not taken into account in computing damages for actual loss. Damages for unjust enrichment are those that I just explained, in Section IV.C.4.     In this case, however, with respect to MacDermid's computer crimes claims MacDermid's claims, if any, must be limited to the costs Olec disclosed in its deposition testimony.[2]

### 6.  Remaining Claims/Counterclaims

All of the remaining claims and counterclaims, which include CUTPA, fraud, negligent misrepresentation, and breach of good faith and fair dealing, should be determined under the general instructions for compensatory damages.  Recall that the purpose of compensatory damages is to compensate a party for the damages inflicted on it by any violations of the law that it has proven, and that there may not be more than one recovery for the same loss.

### D.  PUNITIVE DAMAGES

In addition to compensatory damages, you may, but need not, assess punitive damages if you find that liability exists for certain claims and counterclaims in this case.  For the conduct associated with each of these claims and counterclaims, you will be asked whether punitive damages are warranted, but you will not be asked to calculate the amount of any punitive

---

[2] Docket 358 at 6-7.

damages. This will be evident from the Verdict Form, which will indicate those claims and counterclaims for which you must determine whether punitive damages are warranted.

An award of punitive damages is discretionary. Punitive damages are appropriate only for especially shocking and offensive misconduct – you should only grant punitive damages if the party's actions have been proven to be willful and malicious. In making the decision whether to award punitive damages, you should consider the underlying purposes of punitive damages. These purposes are to punish a party for its conduct and to set an example in order to deter other similarly situated persons from committing similar acts in the future. Punitive damages are intended to protect the community and to express the jury's indignation at the misconduct.

In deciding whether to award punitive damages, consider whether punitive damages are necessary to punish the wrongful conduct or deter other similarly situated persons from engaging in such conduct in the future. The determination of whether punitive damages are warranted is within your discretion.

**V. FINAL INSTRUCTIONS**

You have now heard my instructions on the law and the parties' closing arguments. I remind you that the parties' arguments are not evidence. I will now give you some final instructions before you begin your deliberations.

**A. NOTE TAKING**

You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do not give your notes more importance than your independent recollection of the evidence. If you did not take notes, you should rely on your own memory of the proceedings and should not be unduly influenced by the notes of other jurors. Your notes are not evidence and should not be shared.

**B.  UNANIMOUS VERDICT**

Your verdict must be unanimous and represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors.  It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror.  Until the verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so.  However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Remember at all times that you are not a partisan.  Rather, you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

**C.  FOREPERSON**

When you return to the jury room, you should first elect one person to act as your foreperson.  The foreperson does not have any more power or authority than any other juror, and his or her opinion does not count for any more than any other juror's vote or opinion.  The foreperson merely presides over your deliberations and is your spokesperson to the Court.  He or she will send out any notes, and when the jury has reached its verdict, he or she will notify the marshal that the jury has reached its verdict and you will come out into open court and give the verdict.

After you have retired to begin your deliberations, you are not to leave your jury room without first notifying the marshal, who will escort you.  No deliberations may take place

49

without all jurors being present.  If you bring your cell phones into the jury room, you must turn them off during deliberations and you may not have them out in your hands or on the table during deliberations.  If anyone has a cell phone on or is using a cell phone or handheld device in any way, deliberations must immediately cease. Further, if at any time a juror is in the bathroom facilities, or otherwise not present, the other jurors must cease deliberations and not resume deliberations until all jurors are present.

Finally, you are prohibited from conducting any outside research on the case.

**D.  VERDICT FORM**

A Verdict Form has been prepared for your convenience.  Focusing on the questions set forth in the Verdict Form will assist you in your deliberations.  I want to caution you now to take your time when completing the Verdict Form.  Let me ask you to look at the form now, and I will walk through it briefly with you. As you can see, the form consists of a series of questions. Each question calls on you either to check "yes" or "no" or to write in a monetary amount.  Answer each question as it appears and only those questions.  As you review the form, you will see that there are instructions in ***bold-faced italicized type***.  Please read these instructions and follow them carefully.  Depending on your answer to a particular question, it may not be necessary to answer a later question.  Finally, be consistent in your responses.

You must complete, and return the Verdict Form in court, when you have reached a unanimous agreement as to your verdict. You will have the original Verdict Form in the deliberation room, and I will ask the Courtroom Deputy to collect the copies at this time.  You will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous.  When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, date and sign the Verdict Form.  If the

50

foreperson makes any error in completing the Verdict Form, please do not strike out the error and add a correct response.  Instead, please request a new Verdict Form, so that the Verdict Form that is submitted is error-free.  Then inform the court marshal or clerk that you have reached your verdict.  The Verdict Form must be used only in connection with the charge I have just given to you.  The terms used in the Verdict Form are discussed in my instructions, and these instructions must govern your deliberations.

### E.  FINAL INSTRUCTIONS

Shortly after you go into the jury room, the Courtroom Deputy will bring you the exhibits in this case.  Do not begin your deliberations until she has brought you the exhibits.  Do not even elect a foreperson until she has brought you the exhibits, as it is very important that your deliberations are entirely private and without interruption.

In the jury room, you will have exhibits with you but you will not have a transcript of the testimony.  If you need to have testimony read back to you, we will do so.  However, please understand that it is difficult and time-consuming to locate and read back testimony.  If you nevertheless require a read-back, please be as specific as possible about the portions of the testimony you want to hear.

Your requests for a read-back of testimony and, in fact, any communication with the Court must be made to me in writing, signed by your foreperson, and given to the marshal or clerk.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must caution you that in your communications with the Court you should never reveal your numerical division at any time.  If you are divided, do not report how the vote stands, and if you have reached your verdict, do not report what it is until you are asked in open court.

51

A note about timing.  We ordinarily end our trial day at 3:00 p.m.  But that is not a constraint on your deliberations, and you should certainly not rush to meet any deadline.  You may choose, if you find it necessary, to deliberate past 3:00 p.m.  You may also choose to break at 3:00 p.m. and resume deliberations on [day of the week].  It is your decision.  Whatever you decide, we will be here.

It is proper to add a final caution.  Nothing that I have said in these instructions – and nothing that I have said or done during the trial – has been said or done to suggest to you what I think your verdict should be.  What the verdict shall be is your exclusive duty and responsibility.

Members of the jury, that concludes my instructions to you.  Thank you for your patience and attention.

*    *    *    *    *    *

| Comparison Details | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 7/2/2014 8:22:36 AM |
| Comparison Time | 0.53 seconds |
| compareDocs version | v3.4.15.4 |

| Sources | |
|---|---|
| Original Document | [#13008055] [v1] COURT CHARGE.docxDMS Information |
| Modified Document | [#13008050] [v1] CLEAN CORTRON CHANGES TO COURTS JURY CHARGE.docxDMS information |

| Comparison Statistics | |
|---|---|
| Insertions | 35 |
| Deletions | 24 |
| Changes | 7 |
| Moves | 0 |
| TOTAL CHANGES | 66 |
| | |
| | |
| | |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves    /  Moves | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Formatting | Color only. |
| Changed lines | Mark left border. |
| Comments color | ByAuthorcolor options] |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | False |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | True |
| Update Automatic Links at Open | Word | False |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Normal |
| Remove Personal Information | Word | False |