UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MACDERMID PRINTING SOLUTIONS, LLC<br>Plaintiff,<br><br>v.<br><br>CORTRON CORPORATION<br>Defendant. | No. 08-cv-1649 (MPS) |

**Ruling on Calculation of Compensatory and Punitive Damages Following Remand**

**I. Introduction**

In this long-running commercial dispute involving claims of breach of contract and alleged violations of trade secrets, unfair trade practices, and antitrust laws, the U.S. Court of Appeals for the Second Circuit reversed the antitrust portion of a $64 million judgment entered after a jury verdict in favor of MacDermid Printing Solutions, LLC ("MacDermid"). *MacDermid Printing Solutions LLC v. Cortron Corp.*, 833 F.3d 172 (2d Cir. 2016). The Court of Appeals remanded the case to this Court, with a directive "to recalculate damages in a manner consistent with" its opinion. (ECF No. 492 at 1.) The parties now dispute what this directive means as it applies to this case. According to MacDermid, it means that I must restore a portion of the jury's damages award on an unfair trade practices claim that I had eliminated, post-verdict and pre-appeal, as duplicative of the damages award on the antitrust claims, to account for the fact that the Second Circuit has reversed the judgment on the antitrust claims. (ECF No. 500 at 6.) MacDermid argues that liability for unfair trade practices is broader than liability for antitrust violations and, thus, the Circuit's opinion reversing the judgment on the antitrust claims is no obstacle to reinstating the jury's original damages award on the unfair trade practice claims – which can no longer be considered duplicative. (*Id.* at 13-15.) Defendant Cortron Corp.

1

("Cortron") counters that (1) the Circuit's mandate prohibits a restoration of damages on the unfair trade practices claim, which was not part of the appeal, (2) MacDermid's acceptance of my post-verdict remittitur of the damages on the unfair trade practices claim bars reviving those damages now, (3) MacDermid's arguments are barred by the doctrine of judicial estoppel, and (4) MacDermid's argument fails on the merits, because the unfair trade practices claim was merely derivative of the antitrust claims. (ECF No. 499 at 6.) I agree with Cortron's first two arguments and do not address the remaining arguments. I therefore recalculate compensatory and punitive damages in this action as follows:

| Compensatory Damages | |
|---|---|
| Breach of Contract | $4,112,970.00 |
| CUTPA | $0.00 |
| CUTSA | $3,790,939.00 |
| Computer Crime | $29,970.00 |
| Total | $7,933,879.00 |
| **Punitive Damages** | |
| Breach of Contract | $0.00 |
| CUTPA | $100,000.00 |
| CUTSA | $3,790,939.00 |
| Computer Crime | $0.00 |
| Total | $3,890,939.00 |
| **Total Compensatory and Punitive Damages** | **$11,824,818.00[1]** |

---

[1] This calculation is identical to the one I docketed in October 2016. (ECF No. 493.) Because MacDermid objected to my calculation of CUTPA damages at that time (ECF No. 494), I ordered the parties to file briefs to address MacDermid's argument regarding restoration of a portion of the CUTPA damages award. (ECF No. 496.) Neither party objected to any other aspect of the calculation. I also extended the time for the parties to address attorneys' fees and interest until 14 days after this ruling. (ECF No. 498.)

## II. Background

The facts of this case are set forth in the Second Circuit's opinion, familiarity with which is presumed. A brief procedural history follows. In September 2008, MacDermid filed suit against Cortron in state court, alleging claims for breach of contract and for violations of state and federal antitrust laws, the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§35-50 to 35-58 ("CUTSA"), the Connecticut computer crime statute, Conn. Gen. Stat. §§ 53a-251, 52-570b, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq. ("CUTPA"). Cortron removed the case to this Court and filed various counter-claims. The case was tried to a jury, which found in favor of MacDermid and against Cortron on its counter-claims. (ECF No. 408.) The jury awarded MacDermid $35,423,997 in compensatory damages. *MacDermid Printing Solutions LLC v. Cortron Corp.*, 2015 WL 251527 at *21 (D. Conn. Jan. 20, 2015), *aff'd in part and rev'd in part*, 833 F.3d 172 (2d Cir. 2016).

Following the jury's verdict, I denied Cortron's motion for judgment as a matter of law and its motion for a new trial on the condition that MacDermid agree to a remitted award of $19,757,854 in compensatory damages. In reducing MacDermid's compensatory damages award of $35,423,997, I determined that the component of this award reflecting the verdict on the CUTPA claim – $11,875,204 – "included amounts equal to the damages on the breach of contract count ($7,903,909), and computer crimes count ($29,970), as well as a remainder equal to one-third of the antitrust damages ($3,941,325)." *Id*. at *16. Because "the entirety of the CUTPA award [was] duplicative" and "the injuries underlying [the] amounts [were] compensated elsewhere in the verdict", I concluded that the CUTPA award should be remitted in its entirety, i.e., to zero. *Id*.

On January 22, 2015, MacDermid accepted the remittitur, "expressly accepting the

3

modified compensatory award in the amount of $19,757,854, and foregoing its right to a new trial on damages." (ECF No. 468 at 1.) On February 17, 2015, I entered final judgment in favor of MacDermid in the amount of $64,670,821, representing "$19,757,854 in compensatory damages, $27,538,889 in punitive damages, $2,641,587 in attorney's fees, and $14,732,491 in offer-of-compromise interest." (ECF No. 471.) The punitive damages consisted of an amount equal to twice the antitrust damages, plus $3,790,939 under CUTSA and $100,000 under CUTPA. *MacDermid*, 2015 WL 251527 at *20.

Cortron appealed, arguing that I had erred in "(1) denying Cortron a new trial or judgment as a matter of law on [MacDermid's] antitrust claims; (2) permitting MacDermid to present evidence of its lawyers' patent advice; (3) concluding that the jury's identical awards on each of the antitrust claims were not duplicative; and (4) failing to remit or order a new trial on damages regarding the antitrust and trade-secret claims." *MacDermid*, 833 F.3d at 177. The Second Circuit held that Cortron was entitled to judgment as a matter of law on MacDermid's antitrust claims "because MacDermid failed to present evidence that Cortron's conduct harmed competition," *id*. at 178, but rejected the challenges to the admission of evidence regarding legal advice and the denial of remittitur, and found it unnecessary to address Cortron's remaining arguments. The Second Circuit's opinion concludes with the following paragraph:

> [W]e **REVERSE** the judgment of the District Court insofar as it denied Cortron's post-verdict motion for judgment as a matter of law on MacDermid's antitrust claims. We otherwise **AFFIRM** the judgment of the District Court, leaving undisturbed the award of damages on MacDermid's state law claims for misappropriation of trade secrets, unfair trade practices, computer crimes, and breach of contract. We **REMAND** the cause to the District Court to recalculate damages in a manner consistent with this opinion.

*Id.* at 192.

After receipt of the mandate, on October 12, 2016, I issued an order proposing new damages figures for a revised judgment. (ECF No. 493.) The proposed figures were the same as those shown in the table set forth above. (*See* footnote 1, *supra*.) After MacDermid filed a notice objecting to, and Cortron filed a notice accepting, the proposed damages calculation, I ordered supplemental briefing. (ECF No. 496.)

## III. Discussion

The parties dispute whether the Second Circuit's mandate requires reinstatement of the portion of the jury's CUTPA award I found to be duplicative of the later-reversed antitrust award. MacDermid contends that that portion, which amounts to $3,941,325, must be included in the revised judgment, pointing out that I remitted that portion only because I found those damages duplicative of the antitrust award, which has now been eliminated. (ECF No. 494 at 5.) For the reasons set forth below, I disagree.

### A. The Second Circuit's Mandate Bars this Court from Modifying the CUTPA Portion of the Original Judgment

Under the mandate rule, "a district court must follow the mandate issued by an appellate court." *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015). "Unless the court directs that a formal mandate issue, the mandate consists of a certified copy of the [appellate court's] judgment, a copy of the court's opinion, and any direction about costs." Fed. R. App. P. 41(a); *see United States v. Reyes*, 49 F.3d 63, 66 (2d Cir. 1995). The mandate "describes the duty of the district court on remand upon receipt of the mandate." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)(internal quotation marks and citation omitted). The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *Id*. (internal quotation marks and citation omitted)(emphasis in original). "Likewise, where an issue was ripe for review at the time of an

initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.* A district court may not consider additional issues raised by a party after remand when the mandate has "limit[ed] the issues open for consideration on remand." *Puricelli*, 797 F.3d at 218. In construing a mandate, a district court must consider "both the express terms and broader spirit of the mandate to ensure that its terms have been 'scrupulously and fully carried out.'" *Id.* Furthermore, "it is proper to consult the appellate opinion for guidance in construing the mandate." 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4478.3 (2d ed. 2016).

I first consider the express terms of the mandate. The final sentence of the Second Circuit's judgment states that "[t]he case is REMANDED to the District Court to recalculate damages in a manner consistent with this Court's opinion." (ECF No. 492 at 1.) The Court's opinion addresses three of the several issues Cortron raised in the appeal, and finds that "(1) MacDermid failed to prove harm to competition" and that "[t]he District Court therefore erred in rejecting Cortron's Rule 50(b) motion for judgment as a matter of law on MacDermid's antitrust claims"; (2) "[t]he District Court did not 'abuse its discretion' in permitting MacDermid to introduce evidence previously withheld under the attorney-client privilege and the work-product doctrine"; and (3) "[t]he District Court did not 'abuse its discretion' in denying remittitur or a new trial on damages on MacDermid's state-law claim for misappropriation of trade secrets." *MacDermid*, 833 F.3d at 192. The opinion does not address MacDermid's CUTPA claim, or the damages awarded on that claim after my remittitur (i.e., $0 in compensatory damages and $100,000 in punitive damages), because no party raised those issues on appeal. The mention of

6

the CUTPA claim, and CUTPA damages, in the Second Circuit's description of its judgment in the concluding paragraph of its opinion confirms this:

> [W]e **REVERSE** the judgment of the District Court insofar as it denied Cortron's post-verdict motion for judgment as a matter of law on MacDermid's antitrust claims. We otherwise **AFFIRM** the judgment of the District Court, *leaving undisturbed the award of damages on MacDermid's state law claims for* misappropriation of trade secrets, *unfair trade practices*, computer crimes, and breach of contract. We **REMAND** the cause to the District Court to recalculate damages in a manner consistent with this opinion.

*Id.* (emphasis added).

Two distinct features of the mandate make clear that I may not at this point adjust the award of *CUTPA* damages, as MacDermid urges. First, the Second Circuit affirmed this Court's judgment in all respects except for the portion on the antitrust claims; that is thus the only portion of the judgment I may now revisit, other than ancillary items that might be affected by adjustments to that portion, such as interest and attorneys' fees. (*See* footnote 1, *supra*.) Viewed in this light, the Second Circuit's order "to recalculate damages" means that I must remove antitrust damages from the total award and recalculate it. This is more complicated than simply subtracting the trebled antitrust damages (i.e., $35,471,925 (ECF No. 467 at 33)) from the total original judgment (i.e., $64,670,821), because the original judgment also included offer-of-compromise interest that had itself been calculated on the basis of a total damages figure that included the antitrust award, as well as attorneys' fees. Hence, it is necessary to "recalculate damages" by re-starting the process of adding up the different compensatory and punitive awards – excluding the award on the antitrust claims – and then determining any interest using the new base.² But there is nothing in the Second Circuit's directive to "recalculate damages", or in its

---

² Note, however, that because the base of compensatory and punitive damages plus attorneys' fees was reduced by the elimination of the antitrust award to an amount that fell below MacDermid's $15 million offer of compromise (i.e., $11,824,818 in compensatory and punitive

7

opinion, that suggests that I was to do anything more on remand than make this arithmetical adjustment. There is certainly nothing that suggests I was to reopen a damages award on a separate claim for unfair trade practices that the Circuit itself "le[ft] undisturbed." *MacDermid*, 833 F.3d at 192. I agree with Cortron that the directive to "recalculate damages" – though calling for more than a simple subtraction operation in this case – has a ministerial ring; it does not suggest that I was to decide the legal question whether, had I entered judgment as a matter of law on the antitrust claims under Rule 50(b) after the jury's verdict, I would have had to deny Cortron's motion for remittitur as to the antitrust component of the CUTPA claims.[3] Had the Second Circuit intended that I decide that question on remand, it likely would have directed me to do more than "recalculate damages in a manner consistent with" an opinion that does not substantively address the CUTPA claim. It also likely would not have described its own judgment as "leaving undisturbed" the CUTPA award.[4]

---

damages plus $2,641,587 in attorneys' fees = $14,466,405), MacDermid may no longer be entitled to offer-of-judgment interest. I raised this point in my original proposed recalculation but have not yet rendered a final ruling on it, due to the fact that the amount of post-judgment attorneys' fees may affect the calculus. (ECF No. 493 at 2.)

[3] Indeed, MacDermid also asks me to go further and assess a new punitive damages award under CUTPA, after performing a full analysis of the factors endorsed by Connecticut courts for determining punitive damages. (ECF No. 494 at 12-15.) This, too, would go well beyond "recalculat[ing] damages." *MacDermid*, 833 F.3d at 192.

[4] MacDermid argues that the "leaving undisturbed" language is not part of the mandate, by which it apparently means that that phrase does not appear in the remand order. (ECF No. 500 at 7.) But even if the Second Circuit's judgment should be treated as "a formal mandate," Fed. R. App. P. 41(a), such that the mandate in this case does not include the opinion itself, I must still consider the opinion in construing the remand order, 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4478.3 (2d ed. 2016)("[I]t is proper to consult the appellate opinion for guidance in construing the mandate") – especially when the remand order directs me to recalculate damages in a manner "consistent with this Court's opinion." (ECF No. 492 at 1.)

That brings me to the second feature of the mandate rule that forecloses MacDermid's argument that I should restore the antitrust component[5] of the original CUTPA award: Because no party challenged the CUTPA award on appeal, "the mandate rule generally prohibits the district court from reopening the issue on remand." *Ben Zvi*, 242 F.3d at 95. The CUTPA portion of the judgment was not challenged on appeal, was expressly "le[ft] undisturbed," and is thus no longer open to revision. The Second Circuit has applied this principle of finality in a variety of contexts. *See, e.g., United States v. Minicone*, 994 F.2d 86 (2d Cir. 1993)(where district court denied minor role adjustment and Second Circuit affirmed denial but remanded for resentencing on different issue, mandate rule barred district court from granting minor role reduction on remand). And in a case factually similar to this one, the Federal Circuit barred a party from mounting a challenge to a punitive damages award on remand that it had not raised in the first appeal. *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001)(district court erred in revisiting issue of proper amount of punitive damages on remand after first appeal where defendant did not challenge punitive damages award in first appeal).

MacDermid does not argue, and I do not find, that any "exceptional circumstances" apply here that might warrant deviation from the mandate rule. *See United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996)("A district court may depart from an appellate court's mandate under exceptional circumstances, including (1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior sentencing decision would result in serious injustice if uncorrected." (internal quotation marks and alterations omitted)), *cited in Ben Zvi*,

---

[5] I use the phrase "antitrust component" in this opinion only as shorthand for the portion of the jury's CUTPA award (i.e., $3,941,325) I found to be duplicative of the awards on the antitrust claims.

9

242 F.3d at 95. Assuming the Second Circuit would adopt a "serious" or "manifest" injustice exception to the mandate rule, I conclude that it would not apply on the facts of this case. While it is true that CUTPA provides a broader, more flexible remedy than the antitrust laws, and one that does not require proof of harm to competition, Cortron has shown with myriad citations to the trial record that MacDermid repeatedly cast the portion of the CUTPA award it now seeks to revive as derivative of its antitrust damages in arguments before the jury and before this Court. (*See* ECF No. 499 at 7-10.) This is one proper – and frequent – use of CUTPA, which provides a remedy for violations of the public policy embodied in other statutes; but when CUTPA is employed in that derivative manner, it takes on the limits of the public policy it is advancing. *See Mead v. Burns*, 199 Conn. 651, 665 (1986)("Although *Conaway* holds that CUTPA may authorize a cause of action that builds upon the public policy embodied in specific statutory provisions, such a CUTPA claim must be consistent with the regulatory principles established by the underlying statutes."). Restoring the antitrust component of the CUTPA damages award would contravene principles of antitrust law, as delineated by the Second Circuit, and thus would be inconsistent with the statutes embodying the public policy on which the CUTPA claim was based. In light of the way MacDermid cast its CUTPA claim here, then, there is no "serious injustice" in declining to restore the antitrust component of the CUTPA award.[6]

---

[6] MacDermid argues that the jury instructions do not warrant the conclusion that the jury's CUTPA verdict was legally derivative of its antitrust verdict, but I need not decide that issue. I conclude only that, in light of MacDermid's representations to the jury that its claim of a CUTPA violation "rests on the antitrust " issues, (ECF No. 462 at 89), it is not a "serious injustice" to leave at zero the antitrust portion of the CUTPA award now that the Second Circuit has found the antitrust claims legally deficient.

**B. MacDermid Waived its Right to Seek Additional CUTPA Damages by Accepting the Remittitur**

The cases cited above regarding the mandate rule's bar on reopening issues on remand not raised in the appeal are not precisely on point here, but the way in which they differ only further undermines MacDermid's plea that I revisit the CUTPA award: In those cases, the party who sought to raise the new argument on remand could have raised it in the first appeal but chose not to do so. By contrast, MacDermid could not have appealed my remittitur of the antitrust component of the CUTPA damages award because it accepted that remittitur rather than opt for a new trial.[7] "[A] plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted." *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 279 (2d Cir. 2010). Therefore, "[w]hen a plaintiff has agreed to a conditional remittitur order, he is not allowed to challenge it, seeking an increase of the reduced award, either by appealing or by filing a cross-appeal." *Rangolan v. Cty. of Nassau*, 370 F.3d 239, 243-44 (2d Cir. 2004)(internal citations omitted). In other words, MacDermid waived the right to seek an adjustment to the CUTPA award before Cortron even filed the appeal.

MacDermid argues that it should be excused from the waiver on the basis of theories of mistake or frustration of purpose, but it cites no relevant authority to support application of these theories in this context. MacDermid also argues that failing to adjust the CUTPA award to restore the antitrust component of the CUTPA damages would violate the Seventh Amendment, because it would amount to eliminating what is now a non-duplicative component of the jury's

---

[7] As Cortron points out, however, there were steps MacDermid could have taken in the appeal to attempt to create an opening for the argument it now seeks to make. (ECF No. 499 at 15.) For example, it could have asked the Second Circuit, in the event of reversal on the antitrust claims, to order that I revisit the antitrust component of the CUTPA award and decide whether it should be reinstated. It also could have sought rehearing of the Circuit's ruling to make the same point. MacDermid does not suggest that it took any such steps.

damages award without offering MacDermid a new trial. (ECF No. 500 at 10.) But MacDermid's Seventh Amendment rights were already fully respected in the remittitur procedure, *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996)(trial court has discretion to overturn verdict for excessiveness and order new trial without qualification, "or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)"); and it cites no authority for the notion that it should now receive a *second* opportunity for a new trial because it is dissatisfied with the effect of the Second Circuit's ruling on its overall damages award. Further, the Seventh Amendment does not limit the authority of a court to enter judgment as a matter of law with respect to a claim as to which there is legally insufficient evidence – as the Second Circuit did in this case – even if the effect of doing so is to reduce the plaintiff's overall damages. *Id.* at 436 n. 20 (Rule 50(b) motion for judgment as matter of law is "compatible with the Seventh Amendment"); *Central Office Telephone, Inc. v. AT&T Co.*, 108 F.3d 981, 993 (9th Cir. 1997)(ruling on motion for judgment as matter of law that reduced plaintiff's damages did not require giving plaintiff option of new trial), *rev'd on other grounds, AT&T Co. v. Central Office Telephone, Inc.*, 524 U.S. 214 (1998).

**IV.    Conclusion**

For the reasons set forth above, I adopt the recalculation of compensatory and punitive damages set forth in the table in Part I of this ruling. I previously ordered the parties to file memoranda concerning attorney's fees and offer-of judgment interest within fourteen days of this order. (ECF No. 498.) I now vacate that order and issue the following order instead:

Within 21 days of today, the parties shall meet and confer with regard to attorneys' fees and attempt to reach agreement as to the total amount of fees the Court should include in the revised judgment. Should the parties agree, they shall file a joint statement so indicating and

providing the agreed-upon amount. If no agreement is reached, each side shall file within 21 days of today, a memorandum indicating: (i) Whether fees should be allocated and, if so, in what manner and amount, (ii) Any discovery or other proceedings necessary to effectuate such an allocation, (iii) Whether each party agrees that offer-of-judgment interest is not currently recoverable (i.e., based on the corrected compensatory and punitive damages and the correct amount of attorneys' fees), (iv) Whether and to what extent MacDermid is entitled to fees relating to the appeal; if MacDermid seeks such fees, it shall submit proof of its appellate fees and expenses in the same manner and format as its earlier fee submission, (ECF No. 469), (v) Whether MacDermid should be allowed to recover fees for any further proceedings needed to ascertain the correct amount of attorneys' fees, and (vi) A proposed calculation of post-judgment interest, setting forth the applicable interest rate under 28 U.S.C.§ 1961.[8]

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          April 18, 2017

---

[8] I note that both parties appear to be in agreement that post-judgment interest is recoverable, and that such interest should be recalculated from February 17, 2015 – the date of original judgment. (ECF No. 499 at 24); (ECF No. 494 at 17.) Therefore, the parties need not address those issues in their memoranda.